**KIRBY McINERNEY LLP**
Robert J. Gralewski, Jr. (#196410)
600 B Street, Suite 2110
San Diego, California 92101
Telephone: (619) 784-1442
Email: bgrawleski@kmllp.com

Ira M. Press
250 Park Avenue, Suite 820
New York, New York 10117
Telephone: (212) 371-6600
Email: ipress@kmllp.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WASA MEDICAL HOLDINGS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SORRENTO THERAPEUTICS, INC., HENRY JI, and MARK R. BRUNSWICK,<br><br>Defendants. | Case No.  **'20 CV 0966 AJB  AGS**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Wasa Medical Holdings ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through Plaintiff's undersigned attorney, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys. Such investigation included, among other things, a review of Defendants' public statements and announcements, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sorrento Therapeutics, Inc., securities analysts' reports, news stories, and other publicly available documents. Plaintiffs believe that additional substantial evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Sorrento Therapeutics, Inc. ("Sorrento" or the "Company") common stock between May 15, 2020 and May 22, 2020, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.     Sorrento is a biopharmaceutical company. The Company researches human therapeutic antibodies for the treatment of cancer, inflammation, and metabolic and infectious diseases. On May 8, 2020, Sorrento announced a collaboration with Mount Sinai Health System for the purpose of "generat[ing] antibody products that would act as a 'protective shield' against SARS-CoV-2 coronavirus infection, potentially blocking and neutralizing the activity of the virus in naïve at-risk populations as well as recently infected individuals."[1]

---

[1] Sorrento Therapeutics, Inc. Press Release, "Sorrento And Mount Sinai Health System To Jointly Develop COVI-SHIELD™ Antibody Therapy Targeting SARS-CoV-2 Infection (COVID-19)," May 8, 2020, https://investors.sorrentotherapeutics.com/news-releases/news-release-details/sorrento-and-mount-sinai-health-system-jointly-develop-covi.

3.     On May 15, 2020, Sorrento announced that it had discovered an antibody that had "demonstrated 100% inhibition of SARS-CoV-2 virus infection."[2]   On that same day, Defendant Henry Ji, founder and Chief Executive Officer of Sorrento referred to Sorrento's breakthrough as a "cure."[3]

4.     On this news, Sorrento shares increased $4.14 to close at $6.76 on May 15, 2020, on unusually heavy trading volume. The stock continued to increase after hours and opened at $9.98 on May 18, 2020, trading at a high of $10.00 that same day, which represented an increase of 281.7% from the May 14, 2020 closing price.

5.     On May 20, 2020, Hindenburg Research issued a report (the "Hindenburg Report") doubting the validity of Sorrento's claims and calling them "sensational," "nonsense" and "too good to be true." Hindenburg spoke with researchers at Mount Sinai who stated that Sorrento's announcement was "very hyped" and that "nothing in medicine is 100%."

6.     However, that same day, Defendant Ji appeared on Yahoo! Finance to rebut the Hindenburg Report, stating that "investor[s] suspecting … another pump and dump" were wrong and that "when you see a virus is not infecting the healthy cell, you know you have the real deal" and "eventually the market [will] catch[] up."

7.     On the Hindenburg Report and rebuttal news, the Sorrento shares closed at $5.70 per share on May 20, 2020, representing a decline of $4.30, or 43.0%, from the Class Period high, on unusually high volume.

---

[2] Sorrento Therapeutics, Inc. Press Release, "STI-1499, A Potent Anti-SARS-CoV-2 Antibody, Demonstrates Ability To Completely Inhibit In Vitro Virus Infection In Preclinical Studies," May 15, 2020, https://investors.sorrentotherapeutics.com/news-releases/news-release-details/sti-1499-potent-anti-sars-cov-2-antibody-demonstrates-ability.

[3] Perry Chiaramonte, "California biopharmaceutical company claims coronavirus antibody breakthrough," May 15, 2020, https://www.foxnews.com/science/covid-cure-california-biopharmaceutical-coronavirus-antibody-breakthrough.

8.      Finally, on May 22, 2020, *BioSpace* published an article stating that in a May 21, 2020 interview with Defendants Ji and Brunswick, Ji "insist[ed] that they did not say it was a cure."[4] Ji is quoted as saying:

> *if* it gets through safety studies, *if* it demonstrates efficacy, it ***potentially*** is a cure—*if* you have the antibody in the blood and it prevents infection. After virus infection, if it blocks the virus from replicating in healthy cells continuously, you ***might*** have a cure. We cannot cure the late-stage patients, on ventilators, because of all the other comorbidities and complications. Those are not the job of the antibodies." (emphasis in original).

9.      On this news, Sorrento shares closed at $5.07 per share on May 22, 2020, representing a decline of $4.93, or 49.4%, from the Class Period high, on unusually high volume.

10.     During the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts to investors. Specifically, Defendants mispresented and/or failed to disclose that: (i) the Company's initial finding of "100% inhibition" in an *in vitro* virus infection will not necessarily translate to to success or safety *in vivo*, or in person; (ii) the Company's finding was not a "cure" for COVID-19; and (ii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

---

[4] Mark Terry, "Sorrento Responds to Criticism of COVID-19 Neutralizing Antibodies," May 22, 2020, https://www.biospace.com/article/sorrento-responds-to-criticism-of-covid-19-neutralizing-antibodies-i-will-believe-the-data-/.

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

16.     Plaintiff Wasa Medical Holdings, as set forth in the accompanying certification, incorporated by reference herein, purchased Sorrento securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Sorrento is incorporated under the laws of Delaware with its principal executive offices located in San Diego, California. Sorrento's common stock trades on the NASDAQ exchange under the symbol "SRNE."

18.     Defendant Henry Ji, Ph.D. ("Ji") is the co-founder and Chief Executive Officer of Sorrento. He has also served as a director of Sorrento since Janaury 2006 and previously served as Sorrento's Chief Scientific Officer from November 2008 to September 2012.

19.     Defendant Mark R. Brunswick, Ph.D. ("Brunswick") was the Vice President of Regulatory Affairs and Quality of Sorrento at all relevant times.

20.     Defendants Ji and Brunswick are also referred to as the "Individual Defendant." Because of their positions with the Company, the Individual Defendants possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and

press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Sorrento is a biopharmaceutical company. The Company researches human therapeutic antibodies for the treatment of cancer, inflammation, and metabolic and infectious diseases. On May 8, 2020, Sorrento announced a collaboration with Mount Sinai Health System for the purpose of "generat[ing] antibody products that would act as a 'protective shield' against SARS-CoV-2 coronavirus infection, potentially blocking and neutralizing the activity of the virus in naïve at-risk populations as well as recently infected individuals."[5]

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on May 15, 2020. On that day, Sorrento announced that it had discovered an antibody that had "demonstrated 100% inhibition of SARS-CoV-2 virus infection."[6]

23.     On that same day, Defendant Henry Ji, founder and Chief Executive Officer ("CEO") of Sorrento told Fox News, "***We want to emphasize there is a cure. There is a solution that works 100 percent*** … If we have the neutralizing antibody in your body, you don't need the social

---

[5] Sorrento Therapeutics, Inc. Press Release, "Sorrento And Mount Sinai Health System To Jointly Develop COVI-SHIELD™ Antibody Therapy Targeting SARS-CoV-2 Infection (COVID-19)," May 8, 2020, https://investors.sorrentotherapeutics.com/news-releases/news-release-details/sorrento-and-mount-sinai-health-system-jointly-develop-covi.

[6] Sorrento Therapeutics, Inc. Press Release, "STI-1499, A Potent Anti-SARS-CoV-2 Antibody, Demonstrates Ability To Completely Inhibit In Vitro Virus Infection In Preclinical Studies," May 15, 2020, https://investors.sorrentotherapeutics.com/news-releases/news-release-details/sti-1499-potent-anti-sars-cov-2-antibody-demonstrates-ability.

distancing. You can open up a society without fear."[7] Defendant Ji's statement misleadingly referred to Sorrento's research as a "cure."

24.     Defendant Brunswick was quoted in the same Fox News article as saying, "***As soon as it is infused, that patient is now immune to the disease*** … For the length of time, the antibody is in that system. So, if we were approved [by the FDA] today, everyone who gets that antibody can go back to work and have no fear of catching COVID-19." Defendant Brunswick's statement misleadingly conflated Sorrento's finding of 100% inhibition in an in vitro virus infection with 100% inhibition in a "patient."

25.     On this news, Sorrento shares increased $4.14 to close at $6.76 on May 15, 2020, on unusually heavy trading volume. The stock continued to increase after hours and opened at $9.98 on May 18, 2020, trading at a high of $10.00 that same day, which represented an increase of 281.7% from the May 14, 2020 closing price.

26.     The above statements identified in ¶¶ 23-24 were materially false and/or misleading and failed to disclose material adverse facts to investors. Defendants mispresented and/or failed to disclose that: (i) the Company's initial finding of "100% inhibition" in an *in vitro* virus infection will not necessarily translate to success or safety *in vivo*, or in person; (ii) the Company's finding was not a "cure" for COVID-19; and (ii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

27.     On May 20, 2020, Hindenburg Research issued a report doubting the validity of Sorrento's claims and calling them "sensational," "nonsense" and "too good to be true." Hindenburg spoke with researchers at Mount Sinai who stated that Sorrento's announcement was "very hyped" and that "nothing in medicine is 100%."

28.     The Hindenburg Report stated:

---

[7] Perry Chiaramonte, "California biopharmaceutical company claims coronavirus antibody breakthrough," May 15, 2020, https://www.foxnews.com/science/covid-cure-california-biopharmaceutical-coronavirus-antibody-breakthrough.

When reached via e-mail about the Fox News article, one researcher at the Department of Medicine and Microbiology at Mt. Sinai told us:

"**This looks very hyped.** You need massive amounts of antibody to achieve this. This is the reason why this is not used for influenza. Too expensive, too much antibody needed. This cannot be a solution for everybody. **There are no data yet in humans**. For Ebola, there were several antibodies that worked like this one in vitro, but only a few are protective in vivo. **Bottom line, very early in development to know feasibility**."

A second Mt. Sinai research worker that we reached via e-mail simply told us that: **"In general terms…nothing in medicine is 100%. Nothing."**

We also communicated with Dr. Charles Rice, the Chair in Virology & Head of the Laboratory of Virology and Infectious Disease at Rockefeller University, who told us:

"I don't know the details of the Sorrento MAb but **their claims at this apparent stage of development, without clinical data, seem overstated. There are dozens of groups developing these antibodies and time (and appropriate tests) will tell which are most effective.** As a general solution or "cure" it is unlikely that an infused product, even if long lasting, will cover all of the bases needed to control this infection."

Finally, a PhD at the National Institute of health warned us:

"…be cognizant of the stage of the research (ex. if there is only data in vitro, which means in a petri dish)." (emphasis in original).

29.     Hindenburg also spoke with a former Sorrento C-suite executive who stated that "If you now identify an antibody that binds to an epitope of the viral spike protein, and you thereby inhibit that virus to bind to the ACE-2 entry receptor on the human cell and you thereby inhibit infection*, my loose estimate would be that there are literally hundreds of R&D groups that have something like that*." (emphasis in original). Furthermore, the former employee "warned … about making such bold claims with in vitro results: "…you do know that when somebody has data from an agent that shows efficacy in an in vitro assay – that if you then say I have now a cure, then this statement can only be understood narrowly…."

30.     Another former employee is quoted in the Hindenburg Report as saying "It is too early to really tell if it will translate in vivo. And we would have to see safety data."

31.     The Hindenburg Report also included the following quote from George Yancopoulos, co-founder and President & Chief Scientific Officer of Regeneron, a company that is also researching an antibody treatment for COVID-19, which provides additional context of the stages of development of some of Sorrento's competitors in the field:

> Several companies have previously announced that they have already generated very potent anti-viral neutralizing antibodies – including our company as we announced a while back. That is only the first step, and there are many more steps to manufacture and progress such antibodies into clinical trials – I believe most accounts suggest that our company and probably one other company (Lilly) are the leaders into progressing these antibodies into clinical trials, and both of us are planning on doing this in the next few weeks. And then there are the challenges of successfully carrying out these clinical trials, which is also not guaranteed.
>
> **I am not aware of any data suggesting Sorrento's single Ab is as good as the many others that had already been previously generated (such as ours or Lilly's)**, nor that they have any of the required downstream capabilities, nor that they have demonstrated any capabilities or success previously in other programs (such as the success we demonstrated with our related efforts against Ebola), and they seemingly are substantially behind the leaders at this time.
>
> So it is very hard to seriously evaluate the Sorrento effort. (emphasis in original).

32.     However, that same day, Defendant Ji appeared on Yahoo! Finance to rebut the Hindenburg Report, stating:

> So you have the antibody that can prevent the virus infecting healthy cells. That means you're going to have a real product. If you have a real product, eventually the stock is going to be reflecting the assets you have. And we believe right now probably there's a lot of investor excited about this story. However, there is a lot of investor suspecting this is another pump and dump, which is typical, which is normal, but we don't believe that's the case. And we have working with academic collaborator with a real virus infection. And when you see a virus is not infecting the healthy cell, you know you have the real deal.

33.     The above statements identified in ¶ 32 were materially false and/or misleading and failed to disclose material adverse facts to investors. Defendants misrepresented and/or failed to disclose that: (i) the Company's initial finding of "100% inhibition" in an *in vitro* virus infection will not necessarily translate to success or safety *in vivo*, or in person; (ii) the Company's finding was not a "cure" for COVID-19; and (ii) as a result of the foregoing, Defendants' positive statements about

the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

34.     On the Hindenburg Report and rebuttal news, the Sorrento shares closed at $5.70 per share on May 20, 2020, representing a decline of $4.30, or 43.0%, from the Class Period high, on unusually high volume.

35.     Finally, on May 22, 2020, *BioSpace* published an article stating that in a May 21, 2020 interview with Defendants Ji and Brunswick, Ji "***insist[ed] that they did not say it was a cure.***"[8] Ji is quoted as saying:

> ***if*** it gets through safety studies, ***if*** it demonstrates efficacy, it ***potentially*** is a cure—
> ***if*** you have the antibody in the blood and it prevents infection. After virus infection,
> if it blocks the virus from replicating in healthy cells continuously, you ***might*** have
> a cure. We cannot cure the late-stage patients, on ventilators, because of all the
> other comorbidities and complications. Those are not the job of the antibodies.
> (emphasis in original).

36.     On this news, Sorrento shares closed at $5.07 per share on May 22, 2020, representing a decline of $4.93, or 49.4%, from the Class Period high, on unusually high volume.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Sorrento securities between May 15, 2020 and May 22, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Sorrento's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can

---

[8] Mark Terry, "Sorrento Responds to Criticism of COVID-19 Neutralizing Antibodies," May 22, 2020, https://www.biospace.com/article/sorrento-responds-to-criticism-of-covid-19-neutralizing-antibodies-i-will-believe-the-data-/.

only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Sorrento common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Sorrento or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Sorrento; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

43.     The market for Sorrento's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to

disclose, Sorrento's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Sorrento's securities relying upon the integrity of the market price of the Company's securities and market information relating to Sorrento, and have been damaged thereby.

44.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Sorrento's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Sorrento's business, operations, and prospects as alleged herein.

45.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Sorrento's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

46.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

47.     During the Class Period, Plaintiff and the Class purchased Sorrento's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

1 alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

2 causing investors' losses.

3 **SCIENTER ALLEGATIONS**

4    48.    As alleged herein, Defendants acted with scienter since Defendants knew that the

5 public documents and statements issued or disseminated in the name of the Company were materially

6 false and/or misleading; knew that such statements or documents would be issued or disseminated

7 to the investing public; and knowingly and substantially participated or acquiesced in the issuance

8 or dissemination of such statements or documents as primary violations of the federal securities laws.

9 As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of

10 information reflecting the true facts regarding Sorrento, his control over, and/or receipt and/or

11 modification of Sorrento's allegedly materially misleading misstatements and/or his associations

12 with the Company which made him privy to confidential proprietary information concerning

13 Sorrento, participated in the fraudulent scheme alleged herein.

14 **APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

15    49.    The market for Sorrento's securities was open, well-developed and efficient at all

16 relevant times. As a result of the materially false and/or misleading statements and/or failures to

17 disclose, Sorrento's securities traded at artificially inflated prices during the Class Period. On May

18 18, 2020, the Company's share price reached a Class Period high of $10.00 per share. Plaintiff and

19 other members of the Class purchased or otherwise acquired the Company's securities relying upon

20 the integrity of the market price of Sorrento's securities and market information relating to Sorrento,

21 and have been damaged thereby.

22    1.    During the Class Period, the artificial inflation of Sorrento's shares was caused by the

23 material misrepresentations and/or omissions particularized in this Complaint causing the damages

24 sustained by Plaintiff and other members of the Class. As described herein, during the Class Period,

25 Defendants made or caused to be made a series of materially false and/or misleading statements

26 about Sorrento's business, prospects, and operations. These material misstatements and/or omissions

27 created an unrealistically positive assessment of Sorrento and its business, operations, and prospects,

28

thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

2.     At all relevant times, the market for Sorrento's securities was an efficient market for the following reasons, among others:

(a) Sorrento shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Sorrento filed periodic public reports with the SEC and/or the NASDAQ;

(c) Sorrento regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Sorrento was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

3.     As a result of the foregoing, the market for Sorrento's securities promptly digested current information regarding Sorrento from all publicly available sources and reflected such information in Sorrento's share price. Under these circumstances, all purchasers of Sorrento's securities during the Class Period suffered similar injury through their purchase of Sorrento's securities at artificially inflated prices and a presumption of reliance applies.

4.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or

omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### NO SAFE HARBOR

5.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Sorrento who knew that the statement was false when made.

### FIRST CLAIM
#### Violation of Section 10(b) of The Exchange Act and
#### Rule 10b-5 Promulgated Thereunder
#### Against All Defendants

6.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

7.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

members of the Class to purchase Sorrento's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

8.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sorrento's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

9.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Sorrento's financial well-being and prospects, as specified herein.

10.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sorrento's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Sorrento and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

11.     The Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation,

development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

12.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sorrento's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

13.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Sorrento's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sorrento's securities during the Class Period at artificially high prices and were damaged thereby.

14.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Sorrento was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sorrento securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

15.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

16.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
#### Violation of Section 20(A) of The Exchange Act
#### Against The Individual Defendants

17.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

18.     The Individual Defendants acted as controlling persons of Sorrento within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

19.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

20.     As set forth above, Sorrento and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions a as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

21.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

1    DATED: May 26, 2020

2                                                       By: */s/ Robert J. Gralewski, Jr.*

3                                                       **KIRBY McINERNEY LLP**
4                                                       Robert J. Gralewski, Jr. (#196410)
                                                        600 B Street, Suite 2110
5                                                       San Diego, California 92101
                                                        Telephone: (619) 784-1442
6                                                       Email: bgrawleski@kmllp.com

7                                                       Ira M. Press
                                                        250 Park Avenue, Suite 820
8                                                       New York, New York 10117
                                                        Telephone: (212) 371-6600
9                                                       Email: ipress@kmllp.com

10                                                      *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

I, Shlomo Bistritzky, on behalf of Wasa Medical Holdings, ("Wasa Medical" or "Plaintiff"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am the ___Partner___ of Wasa Medical, and in that capacity, I am authorized to make this certification on Plaintiff's behalf.  Plaintiff has reviewed the attached complaint and authorized its filing.

2.      Plaintiff did not purchase Sorrento Therapeutics, Inc. ("Sorrento") securities at the direction of Plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  Plaintiff fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class.

4.      Plaintiff's transactions in Sorrento securities during the class period, as set forth in the complaint, are set forth below on the attached Schedule A.

5.      During the three years prior to the date of this certification, Plaintiff has not sought to serve on behalf of a class in an action filed under the federal securities laws, except as set forth below:

6.      Plaintiff will not accept payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any class recovery, except as ordered/approved by the Court.

     I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>26</u> day of May, 2020.

_____
Shlomo Bistritzky

## **SCHEDULE A**

**Wasa Medical Holdings' Class Period Transactions in Sorrento Therapeutics, Inc. Stock:**

| Trade Date | Transaction Type | Shares | Share Price |
|---|---|---|---|
| 5/18/2020 | PURCHASE | 5,000 | $6.98 |