UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WASA MEDICAL HOLDINGS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SORRENTO THERAPEUTICS, INC., HENRY JI, and MARK R. BRUNSWICK,<br><br>Defendants. | Case No.:  Case No. 20-cv-0966-AJB-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING CONSOLIDATION;**<br>**(2) APPOINTING LEAD PLAINTIFF; AND**<br>**(3) APPOINTING LEAD COUNSEL**<br><br>**(Doc. Nos. 4–5, 7–10)** |

Presently before the Court are six motions to consolidate, appoint Lead Plaintiff, and appoint Lead Counsel from movants Dr. Dean Roller, the SRNE Investor Group, Mike Nguyen, Andrew Zenoff, Thomas Hammond, and Jing Li. (Doc. Nos. 4–5, 7–10.) Movants Dr. Roller, Nguyen, and Hammond do not oppose the motions, recognizing they do not have the largest financial interest in this litigation. (Doc. Nos. 13–14, 17.) Competing movants the SRNE Investor Group, Zenoff, and Li, however, filed oppositions to the motions. (Doc. Nos. 19, 21, 24.) As fully set forth below, the Court **GRANTS** Zenoff's motion for Lead Plaintiff and appointment of Lead Counsel, (Doc. No. 9), and **DENIES** all other competing motions pending before the Court. The Court also **GRANTS** the parties' requests to consolidate all related actions.

## I. BACKGROUND

On May 26, 2020, this action ("the *Wasa* Action") was filed in this Court alleging violations of the Securities Exchange Act of 1934 ("the Exchange Act") on behalf of all investors who purchased or otherwise acquired Sorrento Therapeutics, Inc. ("Sorrento" or the "Company") shares between May 15, 2020 through May 22, 2020 (the "Class Period"). Specifically, the action alleges that Sorrento, Henry Ji, and Mark R. Brunswick ("Defendants") violated federal securities laws by making materially false and/or misleading statements, and failing to disclose material adverse facts relating to its announcement that the Company had discovered an antibody that had demonstrated 100% inhibition of SARS-CoV-2 virus infection. Then on June 11, 2020, *Calvo v. Sorrento Therapeutics, Inc. et al.*, No. 20-cv-1066 (the "*Calvo* Action") was filed in this District with similar allegations on behalf of investors who purchased Sorrento common stock during the same Class Period. The *Wasa* Action, together with the *Calvo* Action (hereinafter referred to as the "Actions"), seek to recover damages on behalf of Sorrento investors during the same Class Period.

## II. DISCUSSION

### A. Motion to Consolidate

First, all movants request that the Court consolidate the *Wasa* and *Calvo* Actions. Under the Exchange Act, 15 U.S.C. § 78u-4, *et seq.*, if multiple actions involving "substantially the same claim or claims" are filed with a court, the court tasked with selecting the Lead Plaintiff should postpone that selection "until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph." 15 U.S.C. § 78u-4(a)(3)(B)(ii). In addition, pursuant to Federal Rule of Civil Procedure 42(a), if the actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Here, the *Wasa* and *Calvo* Actions assert claims against the same Defendants and involve common questions of law and fact. Both actions involve similar allegations on behalf of investors who purchased Sorrento common stock during the same Class Period. Thus, in the interest of judicial economy, consolidation is appropriate under Federal Rule of Civil Procedure 42. Accordingly, the Court **GRANTS** the parties' motions to consolidate. *See, e.g.*, *Staublein v. Acadia Pharm., Inc.*, No. 18-CV-1647-AJB-BGS, 2019 WL 927756, at *2 (S.D. Cal. Feb. 26, 2019) (consolidating related securities class actions).

### B.   Motion to Appoint Lead Plaintiff

Next, the Court addresses the motions for appointment of Lead Plaintiff. Under the PSLRA, the district court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interest of the class members[.]" 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has filed the complaint or brought the motion for appointment of lead counsel in response to the publication of notice, (2) has the "largest financial interest" in the relief sought by the class, and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). The presumption may be rebutted only upon proof that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

By its terms, the PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a private securities class action litigation. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* At the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the

Federal Rules of Civil Procedure." *Id.* at 729–30 (internal citations omitted). Finally, at the third step, the district court "give[s] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730.

### 1. Procedural Requirements

Under the PSLRA, a plaintiff who files a securities litigation class action must provide notice to class members via publication in a widely-circulated national business-oriented publication or wire service within 20 days of filing the complaint. *See* 15 U.S.C. § 78u-4(a)(3)(A)(I). The notice must: (1) advise class members of the pendency of the action, the claims asserted therein, and the purported class period; and (2) inform potential class members that, within 60 days of the date on which notice was published, any members of the purported class may move the court to serve as lead plaintiff in the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II).

Here, all movants timely moved for appointment as Lead Plaintiff, and therefore all movants easily satisfy the procedural requirements necessary to serve as Lead Plaintiff.

### 2. Largest Financial Interest

Next, pursuant to the PSLRA, the Court shall be guided by a presumption that the most adequate lead plaintiff is the class member who has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). This presumption only may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." The PSLRA does not specify how the Court should calculate "largest financial interest," but most courts look to the largest loss from class period investments when sales are matched to purchases on a Last-In-First-Out ("LIFO") basis. *See, e.g., Staublein v. Acadia Pharm., Inc.*, No. 18-cv-1647 (AJB) (BGS), 2019 WL 927756, at *2 (S.D. Cal. Feb. 26, 2019) (analyzing movant losses on a LIFO basis).

The Court first measures the financial stake of each competing movant. *In re*

4

*Cavanaugh*, 306 F.3d at 730. After review of all the competing movants' briefing, and after excluding those movants who have conceded they do not have the largest financial interest, the alleged losses of each competing movant are as follows:

| Movant | Claim of Loss |
|---|---|
| Andrew Zenoff | $195,500.00 |
| The SRNE Investor Group | $380,908.82 |
| Jing Li | $454,341.00 |

Based on the briefing submitted, it appears Li is the movant with the largest loss. Challenging this assertion, competing movant the SRNE Investor Group argues Li's claim of loss is either inaccurate or unsubstantiated. (Doc. No. 19 at 7.) The loss chart reflecting Li's damages based the claimed loss on the alleged purchases of 100,000 shares on May 18, 2020, for a total of $931,966, and the sale of all of those shares on June 4, 2020 at $4.7763 per share, for a total loss of $477,625. (*See* Doc. No. 10-3). However, the SRNE Investor Group points out this transaction is unsubstantiated because "Li's sworn certification makes no mention of this purported sale transaction." (Doc. No. 19 at 7.) Moreover, the SRNE Investor Group argues the claim of loss is inaccurate because the sale price listed on the loss chart, at $4.7763 per share, cannot possibly be the correct price, because according to financial information databases, Sorrento stock traded no higher than $4.07 per share on June 4, 2020. The Court disagrees.

To the SRNE Investor Group's first point that the claimed loss is unsubstantiated, Li sufficiently explains the PSLRA only requires that a movant's certification provide "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv). Thus, Li's certification is not necessarily defective because she properly provided all her transactions in Sorrento stock acquired during the Class Period. As to the second point that the claimed loss is inaccurate, Li properly calculated her losses based on the procedure set forth in the

PSLRA. Pursuant to the PSLRA, shares sold during the 90-days following the end of the Class Period are valued at the higher of: (i) the sale price or (ii) the average closing price from the end of the Class Period through the date of sale (the "90-day lookback price"). *See* 15 U.S.C. § 78u-4(e). Li's Reply Declaration reveals that on June 4, 2020, Li sold 50,000 shares priced at $3.9806 per share, and another 50,000 shares priced at $4.0400 per share. (Doc. No. 27-1 at 4.) But Li appropriately used the 90-day lookback price of $4.7763 per share to value her loss because the 90-day look back price was higher than the actual sales price. The use of this 90-day lookback price accurately results in a loss of $454,341.00 to Li.

As such, Li has the largest financial interest at stake, and is the presumptive Lead Plaintiff. The next question to be addressed is whether Li also meets the Rule 23 requirements. *In re Cavanaugh*, 306 F.3d at 730. If not, the Court repeats the process with the movant with the next largest financial stake, until a typical and adequate Lead Plaintiff is ascertained. *Id.*

### 3. Rule 23's Typicality and Adequacy Requirement

"The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)." *See In re Cavanaugh*, 306 F.3d at 729–31. The typicality requirement asks whether the presumptive lead plaintiff has suffered the same or similar injuries as absent class members as a result of the same conduct by the defendants and are founded on the same legal theory. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). For the adequacy requirement, the two primary inquiries are (1) whether there are conflicts of interest between the proposed lead plaintiff and the class, and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

While there is minimal dispute as to the typicality requirement because each competing movant share similar questions of law and fact with Class members, there is fervent dispute over whether each competing movant is adequate. The Court will first

determine whether the movant with the largest financial stake, Li, satisfies the requirements of Rule 23. Because the Court concludes that Li does not satisfy the adequacy requirement, the Court will then consider whether the movant with the next largest financial stake, the SRNE Investor Group, satisfies Rule 23's requirements. The Court also concludes the group does not.

### a) Jing Li

Although Li may possess the largest financial interest in this litigation, Li is inadequate to serve as Lead Plaintiff for a few reasons. First, there is a lack of detail for the Court to determine the sophistication and suitability of Li as Lead Plaintiff. The only biographical information provided in Li's Declaration vaguely states that "I, Jing Li, live in Singapore. I have a 2-year degree from Singapore and am a homemaker. I am 47 years old and have been investing in the securities markets for 3 years." (Doc. No. 10-6 at ¶ 2.) There is a dearth of information upon which the Court can determine whether Li would be able to adequately assume the role of Lead Plaintiff. Li's Reply Declaration adds little more to quell the Court's concerns. In the Reply Declaration, Li states, "[m]y interest in Sorrento securities were funded by the income of my husband, who is a businessperson, and by our family's savings. My husband's business interests include ownership of restaurants, real estate holdings, and a software company." (Doc. No. 27-1 ¶ 5.) But the additional information related to Li's husband's assets does not alleviate the Court's concern about whether Li possesses the requisite experience to supervise this high-stakes litigation.[1] With a mere three years of experience in investing in securities, there is good cause to doubt that Li may be adequate to appreciate the nature of the role of Lead Plaintiff. *See In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002); *Perez v. HEXO*

---

[1] The Court has considered whether to conduct a hearing to address the questions relating to the movants' investments and backgrounds. Nevertheless, the onus is on the movants to make a preliminary showing of their adequacy to serve as representatives of the putative class. At this point in the process, a hearing would not alleviate the Court's concerns because a viable candidate for Lead Plaintiff would understand the need to make a more forceful intial showing of adequacy from the start.

*Corp.*, No. 19 CIV. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), reconsideration denied sub nom. *In re HEXO Corp. Sec. Litig.*, No. 19 CIV. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ("Notwithstanding this additional (albeit vague) information, the Court is skeptical that Wong -- an individual investor about whom little is known -- possesses the requisite sophistication to serve as lead plaintiff in this action."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (holding that the "experience of a candidate" is "relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class").

Second, aspects of Li's motion and documents submitted in support thereof also raise concern for the Court. For example, Li was only able to affirm her Class Period transactions in her Declaration "[t]o the best of [her] current knowledge," while by contrast, all other movants were able to affirm their transactions without any equivocation. (Doc. No. 10-5.) Even more, in Li's opposition brief, she revealed for the first time that in addition to representation by Pomerantz LLP, she is also currently represented by The Schall Law, a fact which was apparently inadvertently omitted from her motion due to a clerical error. Whether the error was indeed inadvertent, this omission and lack of attention to detail calls into question the ability of Li to adequately serve as Lead Plaintiff in a class action. *See In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) ("Under either scenario, their failure to discover these obvious errors independently warrants a determination that the Wangs will not be adequate representatives of the class.").

In sum, this proof that Li fails to meet the adequacy requirement overcomes the presumption of Li as Lead Plaintiff.

### b) The SRNE Investor Group

Having determined that Li is not adequate to serve as Lead Plaintiff, the Court will turn to the next investor with the largest financial interest in the matter—the SRNE Investor Group. The SRNE Investor Group is comprised of the following individuals: (1) Jonathan Hirsch, a resident of Canada, and student pursuing a degree in Computer Science, (2)

Abraham Robenzadeh, a resident of New York, working in the real estate industry, with a Bachelor of Science degree in Regional Development, (3) Randy Rodriguez, a resident of Colorado, working in the consumer finance industry, and (4) Fraidon Sarkis, a resident of Illinois, and owner for an e-commerce business, with experience in consumer electronics and medical technology, and with a Bachelor of Science degree in Electrical Engineering. (Doc. No. 5-6 ¶ 2–5.) Li and Zenoff both argue that the SRNE Investor Group does not satisfy the adequacy requirement of Rule 23 because the group is an improper amalgamation of unrelated investors without any pre-existing relationship. To this point, the Court agrees.

Although the PSLRA allows groups to serve as lead plaintiffs, "courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002). For the most part, to "allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997). When unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.

In support of its motion for Lead Plaintiff, the SRNE Investor Group offered a Joint Declaration identifying the members of the group, how the group was formed, and the plan implemented to ensure a coordinated effort moving forward if selected as Lead Plaintiff. After review of the SRNE Investor Group's Joint Declaration, the Court declines to aggregate the claims of each group member. Although aggregation of unrelated investors is not per se prohibited, the Court is moved by the policy underpinning the PSLRA to prevent attorney-driven securities litigation. Indeed, the Joint Declaration confirms there was no pre-existing relationship between the group members prior to communication with counsel. In the Joint Declaration, the group declared, "[w]e are like-minded investors who contacted and retained the law firm of Kirby McInerney LLP ("KM"). After discussing the

merits of the Related Actions and our responsibilities as lead plaintiff under the PSLRA, we decided to move together for lead plaintiff appointment in the Related Actions as the SRNE Investor Group." (Doc. No. 5-6 ¶ 6.) The group explained, "[i]n order to formalize the joint leadership of the action, all of us, together with attorneys from KM, participated in a conference call on July 20, 2020. . . ." to discuss case strategy and procedures and mechanisms for communication and decision-making as a collective unit. (*Id.* ¶ 9.) Confirming that the formation of the group occurred after communication with counsel, the SRNE Investor Group stated that "***[as] a result of the conference call***, our other communications with KM, and learning of each other's interest in litigating this action against Sorrento, we decided to join together and coordinate our efforts into a small group and jointly seek appointment as Lead Plaintiff." (*Id.* ¶ 10 (emphasis added).)

Additionally telling, the SRNE Investor Group's reply brief does not dispute that the group had no prior existing relationship. Instead, the group focuses on the efforts they have undertaken to guarantee that they may function cohesively if appointed as Lead Plaintiff. However, "though counsel for the [SRNE Investor Group] persuasively argued the group members could work together cohesively, and have the wherewithal to oversee counsel and appropriately litigate the class members' claims, appointment of an individual as lead plaintiff alleviates any concerns regarding cohesiveness and group decision making." *See Fialkov v. Celladon Corp.*, No. 15CV1458 AJB (DHB), 2015 WL 11658717, at *4 (S.D. Cal. Dec. 9, 2015).

Thus, the SRNE Investor Group has failed to show that it would be an adequate representative of the class as required by Rule 23, which disqualifies it from being appointed Lead Plaintiff.

### c) Andrew Zenoff

Because the Court determined that the SRNE Investor Group does not meet the adequacy requirement of Rule 23, the Court must proceed to the movant with the next largest financial interest to determine whether that plaintiff satisfies the Rule 23 requirements. *In re Cavanaugh*, 306 F.3d at 731. The Court concludes that Zenoff has the

next largest financial interest in the litigation and satisfies both Rule 23 requirements, making him the most appropriate movant to appoint as Lead Plaintiff.

Here, Zenoff's claimed loss is $195,500.00. (Doc. No. 9-1 at 7.) While this amount is less than Li's financial interest, Zenoff's alleged monetary damage is nevertheless larger than the loss suffered by any of SRNE Investor Group's individual members:

| SRNE Investor Group Member | Claimed Loss |
|---|---|
| Fraidon Sarkis | $177,002. 25 |
| Jonathan Hirsch | $75,225. 75 |
| Abraham Robenzadeh | $67,017. 15 |
| Randy Rodriguez | $61,663. 67 |

Next, none of the competing movants mount a meaningful attack on Zenoff's typicality or adequacy to serve as Lead Plaintiff. First, nothing in the record suggests that Zenoff's claims are atypical of any of the putative claim members' claims. The typicality requirement asks whether the presumptive lead plaintiff has suffered the same or similar injuries as absent class members as a result of the same conduct by the defendants and are founded on the same legal theory. *See Hanon*, 976 F.2d at 508. Zenoff states he has suffered significant losses during the Class Period as a result of the artificial inflation and consequent market corrections of the price of Sorrento's stock, caused by Defendants' false and misleading disclosures during the Class Period. This harm would also extend to absent class members who also purchased Sorrento securities during the Class Period. As such, Zenoff's claims are based on the same legal theories as other class members.

Second, no party has raised any concerns regarding Zenoff's adequacy to assume the role of Lead Plaintiff. The two primary adequacy inquiries are: (1) whether there are conflicts of interest between the proposed lead plaintiff and the class and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *See Ellis*, 657 F.3d at 985. Presently, there is no evidence or argument that a conflict of interest exists between Zenoff and the putative class. Additionally, review of Zenoff's Declaration shows he is an

individual willing and ready to vigorously fulfill his duties as Lead Plaintiff. In particular, Zenoff's Declaration demonstrates he is a 55-year-old resident of California, and an entrepreneur, business owner, and inventor. (Doc. No. 9-6 ¶ 2–3.) Zenoff is the founder of three companies, and the inventor of a maternity nursing product, which has sold millions of units for the span of 24 years. (*Id.* ¶ 3.) As a part of his role in managing these companies, Zenoff has experience hiring and overseeing attorneys in connection with various business matters. (*Id.* ¶ 6.) He attended Babson College, where he studied business, marketing, and entrepreneurship. (*Id.* ¶ 4.) Zenoff additionally has twenty years of experience investing in the capital markets. (*Id.* ¶ 5.) His experience in investing in securities, coupled with his extensive background with leadership and management, makes him a suitable candidate for Lead Plaintiff.

In conclusion, there is insufficient evidence to rebut the presumption of Zenoff as Lead Plaintiff.

### C. Motion to Appoint Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Zenoff wishes to appoint Robbins Geller as Lead Counsel in this case. (Doc. No. 9-1 at 9.) With more than 200 attorneys in offices nationwide, Robbins Geller has prosecuted numerous securities litigations and securities fraud class actions successfully on behalf of investors, including obtaining recoveries in excess of one billion dollars. (*Id.*) Therefore, the Court finds Robbins Geller has the resources and experience to effectively manage the class litigation. Thus, Robbins Geller is appointed as Lead Counsel.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Zenoff's motion for consolidation of related actions, appointment as Lead Plaintiff, and approval of selection of counsel in its entirety. (Doc. No. 9.) The Court **DENIES** movants Dean Roller, the SRNE Investor Group, Mike Nguyen, Thomas Hammond, and Jing Li's motions to appoint Lead Plaintiff and to appoint Lead Counsel. (Doc. Nos. 4–10.) Mike Nguyen's motion, Doc. No. 5, in the

*Calvo* Action, Case. No. 20-cv-01066-AJB-DEB, is also **DENIED**. The Court **ORDERS** as follows:

1) Pursuant to Federal Rule of Civil Procedure 42(a), *Wasa Medical Holdings v. Sorrento Therapeutics, Inc. et al.*, 20-cv-00966-AJB-DEB, and *Calvo v. Sorrento Therapeutics, Inc. et al.*, 20-cv-01066-AJB-DEB, and all related actions are consolidated for all purposes (the "Consolidated Action"). This Order will apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this District or is transferred to this District and is consolidated with the Consolidated Action.

2) A Master File is established for this proceeding. The Master File will be Case No. 20-cv-00966-AJB-DEB. The Clerk of Court will file all pleadings in the Master File and note such filings on the Master Docket.

3) Every pleading in the Consolidated Action will bear the following caption:
IN RE SORRENTO THERAPEUTICS, INC. SECURITIES LITIGATION, Case No. 20-cv-00966-AJB-DEB.

4) Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Andrew Zenoff is appointed to serve as Lead Plaintiff in the Consolidated Action.

5) Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Andrew Zenoff's selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel for the class is approved. Lead Counsel will have the authority to speak for all plaintiffs and class members in all matters regarding the litigation, including, but not limited to, pre-trial proceedings, motion practice, trial, and settlement.

**IT IS SO ORDERED.**

Dated:  February 12, 2021

Hon. Anthony J. Battaglia
United States District Judge