UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SORRENTO THERAPEUTICS, INC. SECURITIES LITIGATION | Case No.:  20-cv-00966-AJB-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE**<br><br>**(Doc. No. 48)** |

Presently pending before the Court is Defendants Sorrento Therapeutics, Inc., Henry Ji, and Mark Brunswick's (collectively, "Defendants") motion to dismiss Counts I and II of Lead Plaintiff Andrew Zenoff's ("Plaintiff") consolidated class action complaint ("CAC"). (Doc. No. 48.) Concurrently with the motion to dismiss, Defendants filed two requests for judicial notice and incorporation by reference. (Doc. Nos. 48-2, 53-1.) The motion is fully briefed, (Doc. Nos. 50 & 53), and the matter is suitable for determination on the papers. For the reasons stated herein, the Court (1) **GRANTS** the motion to

1

dismiss Plaintiff's CAC with leave to amend, and (2) **GRANTS IN PART AND DENIES IN PART** Defendants' request for incorporation by reference and judicial notice.

## I.    BACKGROUND[1]

Sorrento Therapeutics, Inc. ("Sorrento") is a clinical-stage biopharmaceutical company based in San Diego, California, that purports to develop treatments for cancer, pain, and COVID-19. (CAC, Doc. No. 47, ¶ 4.) Prior to and between May 15, 2020 and May 21, 2020 (the "Class Period"), Sorrento's primary task was to develop and commercialize a monoclonal antibody known as STI-1499 for the purpose of treating those with COVID-19. (*Id.*) On May 15, 2020, a Fox News article quoted Defendant Henry Ji as stating, "We want to emphasize there is a cure. There is a solution that works 100 percent . . . [i]f we have the neutralizing antibody in your body, you don't need the social distancing. You can open up a society without fear." (*Id.* ¶¶ 5, 32.) Thereafter, Sorrento's stock price dramatically increased to a daily high of $9.00 per share, or 243.5% higher than the prior trading day's close of $2.62. (*Id.*) The same day, Sorrento's common stock traded hands at nearly seventy-eight times its daily average volume. (*Id.*) At this time, STI-1499 was in the early stages of preclinical testing, and Sorrento was testing antibodies *in vitro*, or in a petri dish or test tube. (*Id.* ¶ 34.) The FDA had not cleared STI-1499 to move beyond the preclinical stage, and the antibody had not yet passed safety tests nor been tested in humans. (*Id.*)

On May 20, 2020, several publications questioned the validity of Defendants' claim that they had found a 100% "cure" for COVID-19, including those of Viceroy Research and Hindenburg Research. (CAC ¶¶ 6, 7.) As a result of these publications on the morning of May 20, 2020, Sorrento's stock price dropped from $6.82 per share on May 19, 2020, to $4.55 per share at approximately 10:15 a.m. EST on May 20, 2020. (*Id.*

---

[1] The following allegations are taken from the Plaintiff's consolidated class action complaint and are construed as true for the limited purpose of ruling on this motion. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

¶ 7.) At 10:30 a.m. EST, Defendant Ji appeared on Yahoo! Finance, during which time he stated, "So you have the antibody that can prevent the virus from infecting healthy cells[.]" (*Id.* ¶ 8.) That day, Sorrento's stock price again increased in value to $5.70 per share by close of day. (*Id.*) On May 22, 2020, BioSpace published an article entitled *Sorrento Responds to Criticism of COVID-19* in which Defendants "insist[ed] that they did not say [STI-1499] was a cure." (*Id.* ¶ 10.) Defendants, rather, clarified that STI-1499 "might be" or "potentially" could be a cure, and that the drug could not "cure late-stage patients." (*Id.*) Hindenburg Research thereafter responded, "encourag[ing] regulators to investigate any stock sales." (*Id.*) After this news, Sorrento's stock price dropped from a daily high of $5.35 per share, to $4.67 per share. (*Id.*)

Prior to the Class Period, in March 2020, Sorrento's independent auditor issued a "going concern" qualification to its 2019 audit opinion, allegedly due to Sorrento's high cash burn rate and its over-leveraged capital structure. (CAC ¶ 9.) Sorrento also warned in its 2019 Form 10-K, filed with the Securities and Exchange Commission ("SEC"), that if it could not raise sufficient financing for its day-to-day operations, it would need to shut down operations. (*Id.*) Further, Oak Tree Capital Management, L.P. ("Oaktree"), Sorrento's high-interest debt holder, required Sorrento to raise certain amounts of outside capital and repay debts in 2020. (*Id.*) On March 13, 2020, Sorrento filed a shelf-registration statement on a Form S-3 with the SEC, authorizing Sorrento to sell up to $1 billion in securities "from time to time in one or more offerings." (*Id.* ¶ 59.) The shelf-registration became effective on March 20, 2020. (*Id.*) On April 27, 2020, Sorrento entered into a sales agreement with Alliance Global Partners ("AGP"), authorizing AGP to sell up to $250 million of Sorrento's stock in at-the-market ("ATM") offerings. (*Id.*) The same day, Sorrento issued a prospectus stating it was offering up to 250 million shares of its common stock to Arnaki Ltd. ("Arnaki") pursuant to a purchase agreement. (*Id.* ¶ 62.) Under this purchase agreement, Sorrento could direct Arnaki to purchase up to 650,000 shares of Sorrento's common stock per business day, and the purchase price was equal to 97.5% of the daily volume weighted average purchase price of the common

stock on the purchase date. (*Id.*) During the second quarter of 2020, following the Class Period, Sorrento raised over $67 million in ATM common stock offerings and used those proceeds to retire the unpaid balance of the Oaktree loan. (*Id.* ¶ 9.)

After the Class Period, on September 28, 2020, Sorrento released the pre-clinical results for STI-1499, renamed COVI-GUARD, in a study entitled "Discovery and Development of Humans SARS-CoV-2 Neutralizing Antibodies using an Unbiased Phage Display Library Approach." (CAC ¶ 38.) The study found that while testing STI-1499, some cells produced antibodies—STI-2020—with a much greater ability to bond to SARS-CoV-2, increasing its neutralizing potency. (*Id.*) STI-2020 is now the "optimized" version of STI-1499. (*Id.*) Although Sorrento announced on September 16, 2020, that the COVI-GUARD antibody treatment would be entering Phase I clinical testing beginning September 2020 and ending January 2021, Sorrento withdrew the study from the Phase I Trial as of January 2021. (*Id.* ¶ 39) The withdrawal status has been available on the government's clinical trial website since January 8, 2021, although Sorrento has not updated investors regarding the status of the trial or informed them that it had to withdraw the trial because of an inability to recruit study participants. (*Id.* ¶ 40.) Sorrento's Form 10-K, filed with the SEC on February 19, 2021, states that it is currently in "a Phase I study of COVI-GUARD in hospitalized patients with COVID-19." (*Id.*) Sorrento has since not given any further updates regarding the withdrawal status of the study or whether Sorrento plans to begin a different study. (*Id.*)

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996)

20-cv-00966-AJB-DEB

(citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

**B.    Rule 9(b)**

A complaint alleging fraud must also comply with Rule 9(b). Under Rule 9(b), when the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud or mistake," even though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In other words, the complaint must set forth what is false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted). Additionally, fraud claims made pursuant to the Securities Exchange Act of 1934 ("Exchange Act") must "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

**C.    Private Securities Litigation Reform Act of 1995 ("PSLRA")**

Finally, claims brought under the Exchange Act are also subject to the requirements of the PSLRA regarding scienter. The PSLRA "requires that a complaint alleging misleading statements or omissions 'specify each statement alleged to have been

5

20-cv-00966-AJB-DEB

misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed.'" *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011) (quoting 15 U.S.C. § 78u–4(b)(1)).

"Thus, the misrepresentation claims pled [under the Exchange Act] must satisfy the 'particularity' requirement of Rule 9(b) of the Federal Rules of Civil Procedure, the 'plausibility' requirement of *Iqbal*, and the scienter requirement of the PSLRA." *Id.* at 690–91.

## III.   REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

Defendants request the Court to take judicial notice and consider under the incorporation by reference doctrine several documents, including press releases, media articles, and short seller reports, in support of their motion to dismiss. (Doc. Nos. 48-2, 53-1.) As set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' request.

While the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Furthermore, courts may take judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) citing *Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006). *See also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) ("The Court also grants Defendants' request [for judicial notice] as to Exhibits 31 through 47, Yahoo! Press releases, news articles, analyst reports, and third party press releases to which the

6

SAC refers, but not for the truth of their contents"). Additionally, courts can consider documents under the "incorporation by reference" doctrine when a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

Here, Defendants request consideration of several exhibits filed in support of their motion to dismiss and in a supplemental request. (*See* Doc. Nos. 48-2, 53-1.) Defendants contend all documents are appropriate subjects for consideration under judicial notice or the doctrine of incorporation by reference. (Doc. No. 48-2 at 2; Doc. No. 53-1 at 2.) Plaintiff objects to several of Defendants' requests, urging the Court not to consider Exhibits A, G, and H to the motion to dismiss (Doc. No. 51) or Exhibits A, B, and C in the supplemental request (Doc. No. 54). Plaintiff does not oppose Exhibits B through F to the motion to dismiss, and the Court finds these documents (media articles and press releases) are proper for consideration. Thus, the Court **GRANTS** Defendants' request for incorporation by reference and judicial notice as to Exhibits B through F in the motion to dismiss. The Court will now turn to Plaintiff's objections.

First, Plaintiff objects to Exhibit A to the motion to dismiss, a press release by Sorrento dated May 15, 2020, and filed with the SEC ("May 15 Press Release"), arguing (1) the May 15 Press Release is neither quoted in the CAC, nor relied upon for Plaintiff's claims, and (2) the May 15 Press Release is inappropriate for judicial notice. (Doc. No. 51 at 3.) Defendants counter that courts in the Ninth Circuit routinely take judicial notice of SEC filings. (Doc. No. 53-2 at 3.) Defendants additionally assert that Plaintiff indeed directly quotes the May 15 Press Release in the CAC, at page 14, lines 17 to 19.[2] (*Id.* at 6.)

The Court agrees with Defendants that the May 15 Press Release may be judicially

_____

[2] Page numbers refer to the CM/ECF page number and not the page number listed on the original document.

noticed and incorporated by reference. SEC filings are the proper subjects of judicial notice as they are not subject to reasonable dispute. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006); *see also In re New Century*, 588 F. Supp. 2d 1206, 1219–20 (C.D. Cal. 2008) (taking judicial notice of the SEC filings submitted by Defendants). Accordingly, the Court **GRANTS** Defendants' request for judicial notice and incorporation by reference of Exhibit A to the motion to dismiss, but the Court will not consider the document for the truth of the matters asserted therein. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (granting defendants' request to take judicial notice of SEC filings, but specifying they will not "where inappropriate" be considered for the truth of the matter asserted); *see also Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447, at *3 (N.D. Cal. Aug. 10, 2012) (taking judicial notice of SEC filings, "but not for the truth of the matters asserted therein").

Next, Plaintiff objects to Exhibits G, a report by Hindenburg Research LLC dated May 20, 2020 ("Hindenburg Report"), and H, a report by Viceroy Research Group dated May 20, 2020 ("Viceroy Report") (collectively, "Short Seller Reports"). Courts regularly take judicial notice of analyst reports "not in order to take notice of the truth of the matters asserted therein, but in order to determine what may or may not have been disclosed to the public." *In re Regulus Therapeutics Inc. Sec. Litig.*, 406 F. Supp. 3d 845, 855 (S.D. Cal. 2019) (quoting *Zamir v. Bridgepoint Educ., Inc.*, Case No. 15-CV-408-JLS-DHB, 2016 WL 3971400, at *4 (S.D. Cal. July 25, 2016) ("While the . . . analyst reports . . . may not be considered for the truth of their contents, the Court may properly look to those reports to understand the total mix of information available to investors over the class period." (internal quotations, citations, and alterations omitted))). Moreover, Plaintiff relies heavily on the Short Seller Reports in its CAC. Accordingly, the Court **GRANTS** Defendants' request for judicial notice and incorporation by reference of the Short Seller Reports, Exhibits G and H to the motion to dismiss.

Plaintiff further objects to Defendants' Exhibit A to their supplemental request, an

article by BioSpace dated May 22, 2020 ("May 22 BioSpace Article"). The Court agrees with Defendants that the May 22 BioSpace Article may be judicially noticed and incorporated by reference. Courts routinely take judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009) citing *Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006). Additionally, Plaintiff extensively quotes and references the May 22 BioSpace Article, and thus it is appropriate for incorporation by reference. Accordingly, the Court **GRANTS** Defendants' request for judicial notice and incorporation by reference.

Lastly, Plaintiff objects to Exhibits B and C, two clinical trial study reports by the National Institutes for Health ("Clinical Trial Study Records"). (Doc. No. 54 at 4.) Specifically, Plaintiffs assert that the compound referred to in the Clinical Trial Study Records is STI-2020 (COVI-SHIELD), while the compound at issue here is STI-1499 (COVI-GUARD), and that Defendants improperly rely upon these exhibits to dispute the inference of scienter in the CAC. (*Id.*) The Court agrees with Plaintiffs that Exhibits B and C to the supplemental request should not be considered by the Court at this stage of pleading because these extrinsic documents were not incorporated by reference in the Complaint and are not proper subjects for judicial notice. The Court finds that such documents would more be appropriate in connection with a motion for summary judgment. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2021) ("As the language of [Rule 12(b)(6)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). Accordingly, the Court **DENIES** Defendants' request for judicial notice of Exhibits B and C to the supplemental request.

///

## IV.   DISCUSSION

Plaintiff asserts claims against all Defendants under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, on behalf of himself and all persons or entities who purchased or otherwise acquired the common stock of Sorrento between May 15, 2020 and May 21, 2020, and were damaged thereby. (CAC ¶ 1.)

### A.   Section 10(b) of the Exchange Act and the PSLRA

Section 10(b) forbids (1) the use or employment of any deceptive device, (2) in connection with the purchase or sale of any security, and (3) in contravention of SEC rules and regulations. 15 U.S.C. § 78j(b); *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Additionally, Rule 10b–5, promulgated by the SEC under § 10(b), forbids the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made not misleading." 17 C.F.R. § 240.10b–5; *see Dura Pharm., Inc.*, 544 U.S. at 341. To succeed in a private civil action under § 10(b) and Rule 10b–5, a plaintiff must establish "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance. . . ; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc.*, 544 U.S. at 341–42.

In their motion to dismiss, Defendants initially assert Plaintiff has failed to satisfy the first two elements of his securities fraud claim—specifically, that Plaintiff has not alleged any particularized facts (1) showing that Defendants' public statements were false or misleading, or (2) supporting a strong inference of scienter. (Doc. No. 48-1 at 7.) For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss Count I of the Complaint.

### 1.   Materially False and Misleading Statements

Defendants assert the alleged misstatements are not misleading because Plaintiff fails to identify any facts demonstrating that STI-1499 is not effective against

COVID-19, and any purportedly omitted facts were actually disclosed. (Doc. No. 48-1 at 15–16.) To allege an actionable false or misleading statement, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u–4(b)(1)). This is a demanding standard, requiring a plaintiff to allege with specificity "contemporaneous statements or conditions," *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001), that demonstrate both "how and why the statements were false" when made, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1071–72 (9th Cir. 2008).

"Falsity" is any "untrue statement of a material fact." 15 U.S.C. § 78u–4(b)(1). It also occurs when a defendant "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading." *Id.* "Often a statement will not mislead even if it is incomplete or does not include all relevant facts." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Instead "a statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (internal citation and quotation marks omitted).

Here, Plaintiff provides the Court with a great deal of facts but fails to sufficiently plead with particularity how each statement is allegedly misleading. Rather, given the conclusory nature of Plaintiff's allegations regarding the statements made by Defendants, the Court has difficulty concluding that Plaintiff's allegations sufficiently establish the first element of their Section 10(b) claims. Plaintiff bases its Section 10(b) claims on four statements:

(1) On May 15, 2020, Defendant Ji told Fox News: "We want to emphasize there is a cure. There is a solution that works 100 percent . . . If we have the neutralizing

antibody in your body, you don't need the social distancing. You can open up a society without fear." (CAC ¶ 43; Doc. No. 48-5 at 2.)

(2) On May 15, 2020, Defendant Brunswick told Fox News: "As soon as it is infused, that patient is now immune to the disease . . . For the length of time, the antibody is in that system. So, if we were approved [by the FDA] today, everyone who gets that antibody can go back to work and have no fear of catching COVID-19." (CAC ¶ 43; Doc. No. 48-5 at 4) (collectively, May 15 Fox News article")

(3) On May 15, 2020, BioSpace quoted Defendant Ji as stating, "One of the antibodies is so powerful that at a very low concentration it is able to 100% completely prevent infection or inhibit the infection . . . So what we've done is identified an antibody that recognizes the COVID-19 virus and completely inhibits its binding to the specific receptor." ("May 15 BioSpace article") (CAC ¶ 44; Doc. No. 48-6 at 3.)

(4) On May 20, 2020, Defendant Ji told Yahoo! Finance, "So you have the antibody that can prevent the virus infecting healthy cells." ("May 20 Yahoo! article") (CAC ¶ 48; Doc. No. 48-7 at 3.)

Plaintiff's main argument is that during the Class Period, Defendants misled investors through several statements regarding the success of STI-1499 against COVID-19, despite the fact they were still in the preclinical testing stages, "had neither passed basic safety tests nor been tested in humans[,]" and "had not yet even received the FDA's approval to begin Phase I clinical trials." (CAC ¶¶ 34, 36.)[3] However, these

---

[3] Defendants assert that Plaintiff's complaint is a "puzzle pleading" and does not comply with the PSLRA or Rule 9(b). (Doc. No. 48-1 at 16.) Plaintiff's complaint contains a designated section entitled "Defendants' False and Misleading Statements and Material Omissions." (CAC at 16.) While the Court notes that Plaintiff's complaint does contain large block quotes, Plaintiff's complaint singles out the actual statements that are the basis of Plaintiff's securities fraud claim. *Cf. Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013); *Lifschitz v. NextWave Wireless Inc.*, No. 08CV1697-LAB (WMC), 2010 WL 11512356, at *3 (S.D. Cal. Mar. 5, 2010); *In re Pixar Sec. Litig.*,

statements fail to provide specific information to successfully argue that Defendants allegedly made false statements about the effectivity of the STI-1499 antibody, lied or misled investors about its preclinical testing status, or schemed to bolster test results to increase Sorrento's stock prices. *See Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001) (holding plaintiffs did not sufficiently plead falsity where they did not specify facts showing why defendants' statements about earnings and sales expectations were false at the time it was made or that defendants knew or with deliberate recklessness disregarded that their statements were inaccurate).

First, regarding Defendants' statement that "there is a cure. There is a solution that works 100 percent[,]" the Court finds this a statement of corporate optimism. It is well-established that "generalized, vague and unspecific assertions" of corporate optimism or statements of "mere 'puffery'" cannot state actionable material misstatements of fact under federal securities law. *See Glen Holly Entm't. Inc. v. Tektronix. Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). Considering the entirety of each article and the context of each statement, these statements amount to no more than generalized assertions of corporate optimism as to the initial success of STI-1499 against COVID-19. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("[M]ildly optimistic, subjective assessment hardly amounts to a securities violation. Indeed, 'professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.'") (internal citations omitted).

Additionally, in reviewing the entirety of each quoted article, the Court finds nothing about the representation of STI-1499's success that is inaccurate or misleading. For example, in the May 15 BioSpace article, Defendant Brunswick is quoted as stating, "We anticipate having enough material to start a Phase I trial in patients in the ICU within two months[,]" indicating Sorrento had not yet moved into Phase I trials. (Doc.

---

450 F. Supp. 2d 1096, 1100 (N.D. Cal. 2006). Accordingly, the Court does not find that Plaintiff's complaint is a "puzzle pleading."

20-cv-00966-AJB-DEB

No. 48-6 at 4.) Moreover, the May 20 Yahoo! article begins with the statement: "Sorrento Therapeutics reported it found an antibody . . . *in a preclinical trial*." (Doc. No. 48-7 at 3) (emphasis added). Similarly, the May 15 Fox News article states the antibody cocktail, which includes STI-1499, is "pending FDA approval," and that "a quick approval from the [FDA] would be needed to make the antibody treatment available within months." (Doc. No. 48-5 at 4.) In reviewing each of these statements within the context of each entire article, the Court does not find Plaintiff has sufficiently pled the existence of false or misleading statements. As a result, Defendants' motion to dismiss is **GRANTED**. However, as this Court will be granting Plaintiff leave to amend its complaint, the Court will continue and analyze Plaintiff's scienter claims to see if they satisfy the heightened pleading standards specified under the PSLRA.

### 2.    Scienter

"Scienter is [the] essential element of a § 10(b) claim." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1032 (9th Cir. 2002). The Supreme Court has explained that scienter for purposes of Section 10(b) and Rule 10b–5 is "the defendant's intention to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007). The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). This means a plaintiff "must provide, in great detail, all the relevant facts forming the basis of her belief" that the defendant has acted with "deliberate recklessness or intent." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). A "strong inference" is one that a reasonable person would deem "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. When analyzing the sufficiency of a plaintiff's scienter pleadings, the Court must "determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). "[I]f no individual allegation is

sufficient, we conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.*

The CAC fails to establish a strong inference of scienter. Plaintiff does not provide any specific factual allegations that point to Defendants' intent to manipulate the preclinical trials or deceive investors. *See In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1023 (S.D. Cal. 2005) (holding that plaintiffs adequately pled scienter by providing the court with "specific factual allegations including the names of persons involved in the alleged fraud, the reports which evidence the alleged fraud, and the actions of Defendants in perpetuating the fraud").

Plaintiff asserts scienter can be alleged by (1) Sorrento's need to raise capital to fund its operations, (2) Sorrento's ATM stock offering to fund its continued operations, (3) Sorrento's purchase agreement with Arnaki, and (4) Sorrento's elimination of high-interest debt. (CAC ¶¶ 55–67.) Specifically, Plaintiff asserts the inflation in Sorrento's stock price after announcing the "cure" motivated Sorrento to offer up common stock through purchase agreements with Arnaki and AGP and allowed Sorrento to retire its high-interest debt with Oaktree. (*Id.* ¶ 67.)

The Court believes Plaintiff pleads these facts to argue motive. In *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53–54 (2d Cir. 1995), the court held allegations that corporate insiders were motivated to defraud the public to achieve an inflated stock price or to increase executive compensation were insufficient to prevent dismissal under Rule 9(b) and Rule 12(b)(6). Here, the CAC clearly states that "[b]ut for the artificial inflation in Sorrento's stock price caused by Defendants' false claim that STI-1499 was a 'cure' for COVID-19, [Sorrento] would not have been able to, or would have found it much more challenging, to: (a) raise the amount of funding it did in the ATM; (b) comply with its commitments to Oaktree 'to meet minimum capital-raising and debt repayment requirements'; and (c) retire the Oaktree loan." (CAC ¶ 67.) As such, this factor alone does not provide a strong indicia of scienter. *See Mallen v. Alphatec Holdings, Inc.*, 861

15

F. Supp. 2d 1111, 1137 (S.D. Cal. 2012) (holding "generalized assertions of motive based on potential profit . . . are also insufficient to meet the heightened pleading requirements [of scienter]").

Second, Defendants argue that the complaint fails to sufficiently allege "any contemporaneous statements by Defendants showing their knowledge of purported falsity." (Doc. No. 48-1 at 19.) The Court agrees. The PSLRA's heightened pleading requirement demands that the complaint, as to each act, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The complaint must allege facts that Defendants made false statements either intentionally or establish a strong inference of deliberate recklessness. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). As to state of mind, the CAC merely alleges that Defendants "falsely claimed it had discovered a COVID-19 cure." (CAC ¶ 63.) These are conclusory statements and do not constitute particular facts to support Defendants' state of mind for purposes of a securities fraud claim.

Finally, even upon a holistic review of all scienter allegations, the Court concludes that Plaintiff has not adequately alleged a strong inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 322. As highlighted above, information indicating that STI-1499 was still in preclinical stages and had not yet received FDA approval was disclosed contemporaneously to the public. Additionally, Plaintiff's allegations that Defendants were motivated by improper financial motives are lacking particularized facts to indicate that Defendants' motivations were anything other than routine business objectives. Therefore, the Court **GRANTS** Defendants' motion to dismiss for failing to allege facts to support scienter.

### B.    Section 20(a) Claims

Because the Court concludes that the underlying § 10(b) claims are subject to dismissal, Plaintiff's § 20(a) claim also fails. *See Zucco Partners*, 552 F.3d at 990

("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)."); *Lipton*, 284 F.3d at 1035 n.15 ("[T]o prevail on their claims for violations of § 20(a) . . . , plaintiffs must first allege a violation of § 10(b) or Rule 10b[–]5." (citations omitted)).

## V.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' motion to dismiss **WITH LEAVE TO AMEND**. (Doc. No. 12.) Should Plaintiff choose to do so, where leave is granted, he must file an amended complaint curing the deficiencies noted herein by **November 30, 2021**.

**IT IS SO ORDERED.**

Dated:  November 17, 2021

Hon. Anthony J. Battaglia
United States District Judge

17

20-cv-00966-AJB-DEB